IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nathaniel Brinkley,                     :
                                        :
                  Petitioner            :
                                        :
            v.                          : No. 1182 C.D. 2016
                                        : Argued:  June 5, 2017
Workers' Compensation Appeal            :
Board (US Airways, Inc., New            :
Hampshire Insurance Company             :
and AIG Claims, Inc.),                  :
                                        :
                  Respondents           :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED:  December 13, 2017


          Nathaniel Brinkley (Claimant) petitions for review of the June 24, 2016
order of the Workers' Compensation Appeal Board (Board) insofar as it affirmed
the decision of a workers' compensation judge (WCJ) granting US Airways Inc.'s
(Employer) petition to terminate compensation benefits.[1]  We affirm.

          On October 22, 2009, Employer issued an amended Temporary Notice
of Compensation Payable (NCP) acknowledging that Claimant suffered a work-

---

[1] The WCJ's order also denied and dismissed Claimant's review and penalty petitions and
dismissed Claimant's claim and reinstatement petitions as moot.  These portions of the WCJ's
order are not at issue in the instant appeal.

related fracture of his right ankle on October 11, 2009, during the course of his employment with Employer as a lead fleet service agent. Claimant returned to work on March 2, 2010, and Employer, thereafter, suspended Claimant's benefits. Claimant continued to work until July 5, 2011, when he was diagnosed with fractured second and fifth right metatarsals[2] and placed in a controlled ankle movement (CAM) walker boot. Claimant could not return to his duties with Employer while wearing the CAM boot and has not returned to work since that time.

On January 9, 2012, Claimant filed a claim petition asserting that he sustained injuries to his right ankle, right foot, fractures of his second and fifth right metatarsals, fracture of the right forefoot, a fracture of a joint of the fifth metatarsal, defect in the superior medial talar dome, plantar fasciitis, gait dysfunction, and aggravation of pre-existing conditions and other medical conditions, as well as wage loss from July 6, 2011. Reproduced Record (R.R.) at 1a-4a. On January 9, 2012, Claimant filed a review and reinstatement petition seeking to amend the description of the acknowledged work injury and alleging a worsening of condition, causing decreased earning power and entitling him to reinstatement of benefits effective July 6, 2011. Employer filed responsive answers denying the material allegations in both petitions.

On March 8, 2012, a WCJ held a hearing on Claimant's petitions. Claimant testified regarding his job duties before and after his work injury. Claimant stated that he began experiencing pain in his right foot, similar to when it was first injured, in March 2011. He testified that in May 2011, the pain in his foot became unbearable and his supervisor instructed him to see the on-site nurse. Claimant stated that soon after his doctor prescribed the CAM walker boot. He testified that

---

[2] Metatarsals are bones in the mid-foot. Stedman's Medical Dictionary 955 (25th ed. 1990).

2

the prescribing doctor wrote a note advising Employer that Claimant would need to return to limited duty in a sedentary position. Claimant stated that Employer told him that he would not be allowed on the premises in the CAM walker boot. Claimant testified that since then he had been seeing his doctor and attending physical therapy sessions regularly and felt that he was improving, though he still experienced pain from his work injury. R.R. at 309a-24a.

On October 15, 2012, Employer filed a termination petition alleging that Claimant was fully recovered as of April 4, 2012. All of the petitions were consolidated for purposes of litigation.

Claimant presented the deposition testimony of his treating physician, Geoffrey Temple, D.O., who first examined Claimant on August 5, 2011. R.R. at 86a. As of May 10, 2012, Dr. Temple believed that, although Claimant was improving, he had not fully recovered from his work injuries. *Id.* at 108a. Dr. Temple opined that Claimant could return to regular employment, but not his pre-injury job. *Id.* at 119a.

Claimant testified by deposition on June 4, 2013, stating that as of April 12, 2012, he had not fully recovered from his injuries. R.R. at 232a. Claimant further testified that, as of the date of the deposition, he still had pain in his right foot. *Id.* Claimant stated that prolonged standing and walking, particularly up and down steps, was difficult and painful for him. *Id.* at 235a. Claimant added that he had not recovered from a right-sided limp that was related to his pain. *Id.* at 258a.

Employer presented the deposition testimony of Paul Horenstein, M.D., who conducted an independent medical examination (IME) of Claimant on April 4, 2012, and reviewed Claimant's medical records. Dr. Horenstein stated that Claimant exhibited a mild limp, however, he could find no reason for it. R.R. at 364a. Dr.

3

Horenstein testified that Claimant had suffered fractures of the second and fifth metatarsals of his right foot, which x-rays and a CAT scan confirmed were fully healed. *Id.* at 365a. In Dr. Horenstein's written report, he opined that Claimant never suffered an ankle fracture. *Id.* at 444a. In his subsequent testimony, Dr. Horenstein explained that he found no sign of an ankle fracture, and it was his opinion that if Claimant had suffered an ankle fracture, it was now healed. *Id.* at 365a. Dr. Horenstein testified that Claimant had no ongoing issues with his right foot or ankle as of the date of his IME. *Id.* at 366a.

The parties submitted a stipulation that disposed of some issues but not all issues raised in the various petitions. R.R. at 208a-12a. Specifically, Employer agreed to accept fractures to the second and fifth metatarsals as the work-related injury. The stipulation did not address the petition for termination, Claimant's assertion that his work injury was incorrectly described in the NCP, or Claimant's request for counsel fees and costs. On April 18, 2013, the WCJ approved the stipulation. On May 6, 2013, Claimant filed a penalty petition alleging that Employer failed to pay compensation per the stipulation. Afterward, Claimant and Employer submitted their respective briefs, proposed findings of fact, and proposed conclusions of law.[3]

In December 2013, after the WCJ's staff advised Employer's counsel that Employer's brief had not been received, Employer's counsel sent correspondence to the WCJ. At an unrelated meeting on August 21, 2014, Employer's counsel advised Claimant's attorney that he received a voicemail from

---

[3] The parties note that the briefs were submitted prior to the September 2013 implementation of the Workers' Compensation Automation and Integration System (WCAIS). WCAIS allows users to file documents, and search and view those documents. http://www.dli.pa.gov/Businesses/Compensation/WC/claims/wcais/Pages/PA-WC-Automation-and-Integration-System.aspx (last visited October 6, 2017).

4

the WCJ requesting a copy of Employer's brief in Microsoft Word format. The WCJ never requested a copy of Claimant's brief in Microsoft Word format. Employer's counsel complied with the request by email but did not copy the email to Claimant's counsel. Claimant's counsel asked Employer's counsel for a copy of the email, but when Employer's counsel forwarded it to Claimant's counsel the attachment could not be opened. R.R. at 47a-49a. Claimant's counsel never received a copy of Employer's email to the WCJ.

On August 27, 2014, Claimant filed a motion for recusal, alleging that the WCJ violated the code of ethics for WCJs set forth in Section 1404 of the Workers' Compensation Act (Act).[4] Claimant asserted that the WCJ engaged in ex parte communications, improperly delayed issuing a decision, and at all times demonstrated an unfair bias in favor of Employer.

The WCJ held a brief hearing to consider Claimant's recusal motion on September 19, 2014. R.R. at 341a. On October 6, 2014, the WCJ issued an order denying Claimant's motion. The WCJ found that the contact with Employer's counsel was clerical in nature and not ex parte, as it was not a communication "as to the merits of the case." R.R. at 61a. The WCJ explained that Claimant was not asked for a copy of his brief because the WCJ was already in possession of Claimant's brief. *Id.* The WCJ further noted that the delay in resolution of the matter was only compounded by Claimant having filed a motion for recusal. *Id.* at 62a. The Board dismissed Claimant's subsequent interlocutory appeal.

---

[4] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §2504. Section 1404(a)(1)-(2) requires the WCJ to avoid impropriety and the appearance thereof in all activities and to perform duties impartially and diligently, and Section 1404(a)(3) requires the WCJ to avoid ex parte communications in a contested, on-the-record matter before the Department of Labor and Industry. 77 P.S. §2504(a)(1)-(3).

On September 4, 2015, the WCJ issued a decision granting Employer's petition to terminate; dismissing Claimant's penalty and review petitions; dismissing the claim and reinstatement petitions as moot; and incorporating the denial of the motion for recusal. R.R. at 488a. The WCJ concluded that Claimant failed to prove that the description of his injuries should be amended to include any additional diagnoses or conditions and Employer proved Claimant was fully recovered from the stipulated-to injuries to his second and fifth right metatarsals. R.R. at 486a-87a. The Board affirmed the WCJ's decision and this appeal followed.

On appeal to this Court,[5] Claimant asserts that the Board erred in affirming the WCJ's decision granting Employer's motion to terminate because Employer's medical expert failed to accept as fact Claimant's accepted work injury. Additionally, Claimant argues that the Board erred in affirming the WCJ's denial of his motion for recusal.

Claimant argues that Dr. Horenstein failed to acknowledge the work-related injury and it was therefore impossible for him to form an opinion as to whether Claimant had fully recovered from that injury. Claimant argues that as a result, Dr. Horenstein's testimony was inadequate as a matter of law and the WCJ erred by finding that Employer met its burden of proof on the termination petition.

"To succeed in a termination petition, the employer bears the burden of proving that the claimant's disability has ceased or that any current disability is unrelated to the claimant's work injury. An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full

---

[5] Our scope of review is limited to determining whether necessary findings were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Minicozzi v. Workers' Compensation Appeal Board (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 28 n.1 (Pa. Cmwlth. 2005).

recovery from his work-related injuries." *Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 865 A.2d 991, 995 (Pa. Cmwlth. 2005) (citations omitted). It is well settled that a medical opinion that does not recognize the work-relatedness of an injury previously determined to be work-related is insufficient to support a termination of benefits. *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213, 218 (Pa. Cmwlth. 2008); *Gillyard*, 865 A.2d at 996.

However, during Dr. Horenstein's deposition, Claimant's counsel requested clarification from Employer's counsel that Employer "has agreed to accept the fifth metatarsal fracture and the second metatarsal fracture as work related." R.R. at 351a. Per the express language of the stipulation, the scope and extent of Claimant's injuries were still subject to dispute. R.R. at 210a. Dr. Horenstein agreed that Claimant suffered fractures of the second and fifth metatarsals, i.e., the accepted injuries, and he opined that Claimant had recovered from those injuries. Claimant's argument that Dr. Horenstein failed to acknowledge the accepted injuries is not supported by the record.[6]

Claimant next argues that the Board erred in affirming the WCJ's decision because the WCJ should have recused herself. We disagree.

A WCJ is presumed capable of recognizing in herself the symptoms of bias and prejudice. *Suprock v. Workmen's Compensation Appeal Board (Millersville University of Pennsylvania)*, 657 A.2d 1337, 1340 n.6 (Pa. Cmwlth. 1995). Overcoming that presumption requires bias to be shown on the record. *Id.*

---

[6] Moreover, contrary to Claimant's assertions, Dr. Horenstein's testimony that if Claimant had suffered a right ankle fracture, that fracture was healed, would be competent to support a termination of benefits if the ankle fracture were an acknowledged work injury. *See O'Neill v. Workers' Compensation Appeal Board (News Corp. Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011).

7

"The standard for determining whether recusal is proper is whether there is substantial reasonable doubt as to the judge's ability to preside impartially." *Steinhouse v. Workers' Compensation Appeal Board (A.P. Green Services)*, 783 A.2d 352, 356 (Pa. Cmwlth. 2001).

Claimant's allegations of partiality are based on the voicemail the WCJ left with Employer's counsel advising that Employer's brief had not been received and requesting a copy in Microsoft Word format and Employer's email of the brief to the WCJ that was not copied to Claimant. Claimant also alleges that the WCJ demonstrated unfairness to him throughout the proceedings. However, an adverse ruling does not, by itself, indicate partiality. *Cellucci v. Laurel Homeowners Association*, 142 A.3d 1032, 1045 (Pa. Cmwlth. 2016).

While WCJs are bound by the Act to comport themselves with the utmost regard to impartiality, the "mere allegation of bias, for which there is no support in the record, is insufficient to rebut the presumption that a WCJ is capable of rendering an impartial decision." *Tindal v. Workers' Compensation Appeal Board (City of Philadelphia)*, 799 A.2d 219, 224 (Pa. Cmwlth. 2002). Our careful review of the record reveals no support for Claimant's allegations.

Claimant relies on this Court's decision in *Kinter v. Workmen's Compensation Appeal Board (R.D. Werner Company, Inc.)*, 579 A.2d 1010 (Pa. Cmwlth. 1990), as requiring that a WCJ "avoid even the appearance of possible prejudice." Claimant's Brief at 15. *Kinter*, however, can easily be distinguished from the present matter as that case involved a conflict of interest between the referee and the employer's law firm, from whom the referee had sought legal advice on several occasions. In contrast, the WCJ's voicemail message to Employer and Employer's responsive email fall short of establishing a relationship between the

8

WCJ and Employer's counsel and are otherwise insufficient to raise "substantial reasonable doubt as to the WCJ's ability to preside impartially." *Steinhouse*, 783 A.2d at 356. After careful review of the record, we find no evidence to support Claimant's contention that the alleged bias exists.

Accordingly, the order of the Board is affirmed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nathaniel Brinkley,               :
                                  :
                  Petitioner      :
                                  :
          v.                      : No. 1182 C.D. 2016
                                  :
Workers' Compensation Appeal      :
Board (US Airways, Inc., New      :
Hampshire Insurance Company       :
and AIG Claims, Inc.),            :
                                  :
                  Respondents     :

O R D E R

AND NOW, this 13th day of December, 2017, the order of the Workers'

Compensation Appeal Board, dated June 24, 2016, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nathaniel Brinkley,                          :
                        Petitioner            :
                                              :
            v.                                :
                                              :
Workers' Compensation  Appeal                 :
Board (US Airways, Inc., New                  :
Hampshire Insurance Company                   :
and AIG Claims, Inc.),                        :    No. 1182 C.D. 2016
                        Respondents           :    Argued:  June 5, 2017


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE                        FILED:  December 13, 2017


            The burden on an employer in a termination matter demands
presentation of "unequivocal and competent medical evidence of the claimant's full
recovery from his [or her] work-related injuries."  *Gillyard v. Workers'
Compensation Appeal Board (Pa. Liquor Control Bd.)*, 865 A.2d 991, 995 (Pa.
Cmwlth. 2005).   In this case, despite the Majority's view to the contrary, US
Airways, Inc. (Employer) has failed to satisfy this burden.

            The medical expert presented by Employer (Dr. Horenstein) simply did
not believe Nathaniel Brinkley (Claimant) had suffered the underlying injury at
issue:  "It is my opinion that [Claimant] *did not* sustain a right ankle fracture *at any*

*time*." Dr. Horenstein April 4, 2012 report, R. 444a (emphasis added). Coupled with his deposition testimony, it is clear that the only thing Dr. Horenstein is "unequivocal" about is his belief that no ankle fracture was ever suffered by Claimant. As such, this testimony and report are insufficient to sustain Employer's burden. Since the Majority finds otherwise, I must dissent.

The Majority bases its reasoning, in part, on this Court's decision in *O'Neill v. Workers' Compensation Appeal Board (News Corp. Ltd.)*, 29 A.3d 50 (Pa. Cmwlth. 2011). The foundation for that decision was our holding in *Shaffer v. Workers' Compensation Appeal Board (Weis Markets)*, 667 A.2d 243 (Pa. Cmwlth. 1995), where we stated: "Even if a medical expert admits to uncertainty, reservation or lack of information with respect to medical details, the testimony remains unequivocal so long as the expert expresses a belief that, in his or her professional opinion, a fact exists." *Id.* at 245-46. Here, the expert, Dr. Horenstein, simply did not provide a "professional opinion" consistent with *Shaffer*. Accordingly, the Employer's reliance on Dr. Horenstein is both misplaced and insufficient, and requires our reversal.

_____
JOSEPH M. COSGROVE, Judge

JMC-2